UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------x)

UNITED STATES OF AMERICA  :
and  :
STATE OF DELAWARE,  :

     *Plaintiffs,*  :

     v.  :     Civil Action No.

       :
E.I. DU PONT DE NEMOURS &  :
COMPANY, INC., and CIBA SPECIALTY  :
CHEMICALS CORPORATION  :

     *Defendants.*  :

---------------------------------x

COMPLAINT

The United States of America, by authority of the Attorney General, and at the request of

the United States Department of the Interior, Fish and Wildlife Service ("FWS") and the

National Oceanic and Atmospheric Administration ("NOAA"), an agency of the Department of

Commerce, and the State of Delaware, on behalf of the Delaware Department of Natural

Resources and Environmental Control ("DNREC"), allege as follows:

NATURE OF ACTION

1.    This is a civil claim for natural resource damages brought pursuant to the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42

U.S.C. §§ 9601 *et seq.* and the Delaware Hazardous Substance Cleanup Act ("HSCA"), 7 Del. C.

Chapter 91 with respect to the release of hazardous substances from the DuPont-Newport

Superfund Site in Newport, Delaware (the "Site"), and the resulting injury to natural resources.

1

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607(a) and 9613(b).

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 9613(b).

## PLAINTIFFS

4.    Plaintiffs are trustees for natural resources injured as a result of releases of hazardous substances pursuant to Section 107(f)(2)(A) of CERCLA, 42 U.S.C. § 9607(f)(2)(A).

5.    The President has designated the Secretaries of the Interior and Commerce as trustees for various natural resources. *See* Exec. Order No. 12,580, as amended by Exec. Order No. 12,077, 61 Fed. Reg. 45871 (Aug. 28, 1996); 40 C.F.R. § 300.600(b)(2). Federal trusteeship for the Site includes, but is not limited to, the following natural resources and their supporting ecosystems: threatened and endangered species, migratory birds, certain anadromous fish and certain federally managed water resources.

6.    DNREC is the designated trustee for natural resources which include, but are not limited to, the following natural resources and their supporting ecosystems: land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State of Delaware.

## DEFENDANTS

7.    Defendant E.I. du Pont de Nemours & Company, Inc. ("DuPont") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

8.    Defendant Ciba Specialty Chemicals Corporation ("Ciba") is a corporation incorporated

2

under the laws of the State of Delaware, with its principal place of business at 560 White Plains

Road, Tarrytown, New York 10591.

GENERAL ALLEGATIONS

**A.     The Site**

9.      The DuPont-Newport Superfund Site consists of approximately 120 acres in Newport,

Delaware and unincorporated New Castle, Delaware at James and Water Streets, near the

interchange of I-95 and I-495 and Delaware State Route 141.

10.     For the past 100 years, the Site has been used in various chemical manufacturing

operations.

11.     The Site is the location of a paint pigment plant (the Newport facility), a former

chromium dioxide plant (the Holly Run facility), and two inactive industrial landfills (the north

and south landfills).

12.     In the late 1970s, DuPont built a second facility at the Site in order to expand its

chromium dioxide production (the "Holly Run facility").

13.     In approximately 1984, DuPont sold the Newport facility to Ciba.  Since the sale, Ciba

has continued to produce QA pigment at the Newport facility.

14.     The Site is also the location of two inactive industrial landfills (referred to as the north

and south landfills), which have been (with the exception of a portion of the south landfill)

owned and operated by DuPont since 1929.  From 1902 to 1974, the north landfill was used by

DuPont (and Krebs, its predecessor) to dispose of wastes from its manufacturing operations.

From 1902 until 1953, the south landfill was used by DuPont (and Krebs, its predecessor) to

dispose of large quantities of Lithopone wastes.

3

15.    In approximately 2000, DuPont closed the Holly Run facility.

16.    As a result of the manufacturing operations described above, the Site became heavily

contaminated with various hazardous substances, including heavy metals (particularly arsenic,

barium, cadmium, lead, and zinc) and volatile organic compounds (such as tetrachloroethane and

trichloroethane).

**B.    Site Ownership**

17.    Krebs owned and operated the Site from 1902 until 1929.

18.    In 1929, DuPont purchased the Site.  DuPont has owned and operated some or all of the

Site from 1929 through the present.

19.    In approximately 1984, DuPont sold a portion of the Site (the Newport facility) to Ciba-

Geigy, Ciba's corporate predecessor.

20.    In 1996, Ciba-Geigy's specialty chemicals business (which included the Newport

facility) was spun-off and became Ciba Specialty Chemicals Corporation.

21.    As part of the spin-off, Ciba acquired title to that portion of the Site containing the

Newport facility.

22.    The Site is currently owned by DuPont and Ciba (with the exception of a portion of the

south landfill).

**C.    Response Actions**

23.    In the late 1970s and early 1980s, the Delaware Department of Natural Resources and

Environmental Control ("DNREC") and DuPont began sampling ground water at the Site.  The

results indicated that the ground water was contaminated with elevated levels of heavy metals

(particularly barium, cadmium, and zinc) and volatile organic compounds (primarily

tetrachloroethane and trichloroethane).

24.     During the mid-1980s, DNREC and EPA gathered information to determine whether the

Site should be listed on the National Priorities List ("NPL") and in February 1990, the Site was

listed on the NPL.

25.     On August 22, 1988, EPA and DuPont entered into an Administrative Order on Consent

("AOC") to conduct a remedial investigation and feasibility study ("RI/FS") at the Site.

26.     EPA issued the record of decision ("ROD") for the Site on August 26, 1993.

27.     Following issuance of the ROD, EPA issued an Unilateral Administrative Order to

DuPont and Ciba, which required them to perform the Remedial Design/Remedial Action

("RD/RA") described in the ROD.  The RD/RA initially included excavating contaminated soils;

capping the north landfill; restoring wetlands; recovering and treating ground water; excavating

and consolidating contaminated soils, stabilizing *in-situ* soil, and capping of the south landfill;

dredging and monitoring the Christina River; installing a groundwater barrier wall along the

north bank of the Christina River; and paving sections within the contaminated plant areas.

28.     The north and south landfills are adjacent to wetland areas known as the North and South

Wetlands.  Surface migration via runoff and groundwater migration from the north and south

landfills contaminated soils, surface waters, and sediments within sections of the North and

South Wetlands, and resulted in contamination to trust resources and their supporting

ecosystems.

29.     Assessment activities conducted by the Trustees concluded, *inter alia*, that post-

remediation concentrations of hazardous substances such as cadmium, lead, and zinc remain in

the North and South Wetland sediments, and continue to cause injuries to federal and state trust

5

resources such as benthic organisms, fish, birds.

30.    Under Section 107 of CERCLA, 42 U.S.C. § 9607, and 43 C.F.R. Part 11, the Secretaries

of the Interior and Commerce, and the Secretary of DNREC are entitled to recover damages for

injury to natural resources, including (1) the cost to restore, replace, or acquire the equivalent of

such natural resources; (2) the compensable value of lost services resulting from the injury to

resources; and (3) the reasonable cost of assessing injury to the natural resources and the

resulting damages.

CERCLA LIABILITY

31.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part as follows:

Notwithstanding any other provision or rule of law, and subject only to the

defenses set forth in subsection (b) of this section --

(1)    the owner and operator of a vessel or a facility,

(2)    any person who at the time of disposal of any hazardous substance owned

or operated any facility at which such hazardous substances were disposed of,

(3)    any person who by contract, agreement, or otherwise arranged for disposal

or treatment, or arranged with a transporter for transport for disposal or treatment,

of hazardous substances owned or possessed by such person, by any other party

or entity, at any facility or incineration vessel owned or operated by another party

or entity and containing such hazardous substances, and

(4)    any person who accepts or accepted any hazardous substances for

transport to disposal or treatment facilities, incineration vessels or sites selected

6

by such person, from which there is a release, or a threatened release which

causes the incurrence of response costs, of a hazardous substance, shall be liable

for -

> (5)    damages for injury to, destruction of, or loss of natural resources,
>
> including the reasonable costs of assessing such injury, destruction, or loss
>
> resulting from such a release; . . .

32.    The Site, including its wetlands, surface and sub-surface soils, and water, is a "facility,"

within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and

9607(a).

33.    The substances contaminating natural resources at the Site are "hazardous substances,"

within the meaning of Sections 101(14), 104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14),

9604(a), and 9607(a).

34.    There was a "release" or "threatened release" of hazardous substances into the

environment at and from the Site, within the meaning of Sections 101(8), 101(14), 101(22),

104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14), 9601(22), 9604(a), and

9607(a).

35.    Hazardous substances were "disposed" of at the Site, within the meaning of Sections

101(14), 101(29) and 107(a) of CERCLA, 42 U.S.C. § § 9601(14), 9601(29) and 9607(a).

36.    DuPont owned and operated the Site within the meaning of Section

101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A) from 1929 until the present. DuPont sold the

Newport facility to Ciba in 1984, but continues to retain ownership of other portions of the Site.

37.    DuPont is a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. §
9601(21).

38.    DuPont is the successor-in-interest to Krebs, and therefore succeeds to Krebs' liability
under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as the owner and operator of the
Site at a time when hazardous substances were disposed of therein.

39.    DuPont is also liable under Section 107(a)(2), as the owner and operator of the Site at the
time hazardous substances were disposed of thereon.

40.    DuPont is further liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as
a current owner and operator of portions of the Site.

41.    Ciba is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. §
9601(21).

42.    Ciba is a current owner and operator of portions of the Site.

43.    Ciba and its predecessors have been owners and operators of portions of the Site since
approximately 1984.

44.    Ciba is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as the
current owner and operator of portions of the Site.

45.    The release of hazardous substances from the facilities owned and operated by DuPont
and Ciba caused injury to, destruction of, and loss of natural resources at the Site, within the
meaning of Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C).

46.    The United States has incurred and continues to incur costs related to the assessment of
the loss of natural resources resulting from the release of hazardous substances at the Site.

47.    Pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607(a), Defendants DuPont and Ciba

are jointly and severally liable to Plaintiffs the United States and the State of Delaware for

damages for injury to, destruction of, and loss of natural resources and services resulting from

the release of hazardous substances at or from the Site, including the loss of use and costs of

restoration, replacement, or acquisition of equivalent resources and for the costs of assessing

such injury and damages.

HSCA LIABILITY

48.     Seven Del. C. Section 9105(a) provides as follows:

(a) The following persons are liable with respect to a facility from which there is or has

been a release or imminent threat of release, except as provided in subsection (c) of this

section:

(1) Any person who owned or operated the facility at any time.

(2) Any person who owned or possessed a hazardous substance and who by

contract, agreement or otherwise arranged for disposal or treatment of a

hazardous substance at the facility.

(3) Any person who arranged with a transporter for transport, disposal or

treatment of a hazardous substance to the facility.

(4) Any person who generated, disposed of or treated a hazardous substance at the

facility.

(5) Any person who accepted any hazardous substance for transport to the

facility, when the facility was selected by the transporter.

(6) Any person who is responsible in any other manner for a release or imminent

threat of release.

9

49.      Seven Del. C. Section 9105(b) provides in pertinent part as follows:

(b) Each person who is liable under this section is strictly liable, jointly and severally, for

all costs associated with a release from a facility and for all natural resource damages

resulting from the release. The Secretary may recover all costs and damages from all

responsible parties.

50.      The Site, including its wetlands, surface and subsurface soils, and water, is a "facility,"

within the meaning of 7 Del. C. Section 9103(9).

51.      The substances contaminating natural resources at the Site are "hazardous substances,"

within the meaning of 7 Del. C. Section 9103(11).

52.      There was a "release" or "imminent threat of release" of hazardous substances into the

environment at and from the Site, within the meaning of 7 Del. C. Sections 9103(20) and (12),

respectively.

53.      Hazardous substances released at the Site constituted "disposal" within the meaning of 7

Del. C. Section 9103(7).

54.      DuPont was an "owner or operator" of portions of the Site within the meaning of 7 Del.

C. Section 9103(15) from 1929 until the present.  DuPont sold the Newport facility to Ciba in

1984.

55.      DuPont is a "person," within the meaning of 7 Del. C. Section 9103(16).

56.      DuPont is the successor-in-interest to Krebs, and therefore succeeds to Krebs' liability

under 7 Del. C. Section 9105(a)(1) as the owner and operator of the Site at a time when

hazardous substances were disposed of therein.

57.      DuPont is also liable under 7 Del. C. Section 9105(a)(1) as the former owner and

operator of portions of the Site.

58.     DuPont is further liable under 7 Del. C. Section 9105(a)(1) as a current owner and operator of portions of the Site.

59.     Ciba is a "person" within the meaning of 7 Del. C. Section 9103(16).

60.     Ciba is a current owner and operator of portions of the Site.

61.     Ciba and its predecessors have been owners and operators of portions of the Site since approximately 1984.

62.     Ciba is liable under 7 Del. C. Section 9105(a)(1), as the current owner and operator of portions of the Site.

63.     The release of hazardous substances from the facilities owned and operated by DuPont and Ciba caused natural resource damages at the Site, within the meaning of 7 Del. C. Section 9105(b).

64.     The State of Delaware has incurred and continues to incur costs related to the assessment of the loss of natural resources resulting from the release of hazardous substances at the Site.

65.     Pursuant to 7 Del. C. Section 9105(b), Defendants DuPont and Ciba are jointly and severally liable to Plaintiff the State of Delaware for all natural resource damages resulting from the release, including damages for injury to, destruction of, and loss of natural resources and services, the loss of use and costs of restoration, replacement, or acquisition of equivalent resources, and for the costs of assessing such injury and damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(1)     Enter a judgment against Defendants E.I. du Pont de Nemours & Company, Inc. and Ciba Specialty Chemicals Corporation jointly and severally for liability to the United States

and the State of Delaware pursuant to CERCLA Section 107(a)(4)(C), 42 U.S.C. §

9607(a)(4)(C), for all damages for injury to, destruction of, and loss of natural resources at the

Site including the unreimbursed past, present, and future costs of assessing such damages, the

cost of restoring, replacing, and/or acquiring the equivalent of those injured resources, and the

past, present, and future diminution in value of those resources pending restoration or

replacement, in an amount to be proven at trial;

(2)    Enter a judgment against Defendants E.I. du Pont de Nemours & Company, Inc.

and Ciba Specialty Chemicals Corporation jointly and severally for liability to the State of

Delaware pursuant to 7 Del. C. Section 9105(b), for all damages for injury to, destruction of, and

loss of natural resources at the Site including the unreimbursed past, present, and future costs of

assessing such damages, the cost of restoring, replacing, and/or acquiring the equivalent of those

injured resources, and the past, present, and future diminution in value of those resources

pending restoration or replacement, in an amount to be proven at trial;

(3)    Enter a judgment against DuPont and Ciba in favor of the United States and the

State of Delaware for all costs of this action, including attorney's fees; and

(4)    Award the United States and the State of Delaware such other and further relief as

this Court may deem appropriate.


Respectfully submitted,


SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources
     Division
U.S. Department of Justice
Washington, D.C. 20530


RACHEL JACOBSON
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-5474 (PHONE)
(202) 616-6583 (FAX)


COLM F. CONNOLLY
United States Attorney
District of Delaware


DOUGLAS E. McCANN
Assistant United States Attorney
     Delaware Bar ID No. 3852
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware  19899-2046

*Attorneys for the United States*

OF COUNSEL:
Sharon Shutler, NOAA
Mark Barash, DOI

ROBERT S. KUEHL
Deputy Attorney General
    Delaware Bar I.D. No. 2602
820 N. French Street
Wilmington, Delaware 19801

*Attorney for the State of Delaware*

&JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United States of America and State of Delaware

**DEFENDANTS**

E.I. duPont de Nemours & Co. and CIBA Specialty Chem. Corp.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Douglas E. McCann
Assistant United States Attorney
1007 Orange Street, Suite 700
PO Box 2046
Wilmington, Delaware 19899-2046  tel. 302-573-6277

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

[x] 1  U.S. Government Plaintiff

[ ] 2  U.S. Government Defendant

[ ] 3  Federal Question (U.S. Government Not a Party)

[ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 650 Airline Regs. | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability | [ ] 690 Other | [ ] 840 Trademark | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| | | | [ ] 863 DIWC/DIWW (405(g)) | [x] 893 Environmental Matters |
| | **PERSONAL INJURY** | | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| | [ ] 362 Personal Injury— Med. Malpractice | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| | [ ] 365 Personal Injury — Product Liability | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| | **PERSONAL PROPERTY** | [ ] 790 Other Labor Litigation | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions |
| | [ ] 370 Other Fraud | [ ] 791 Empl. Ret. Inc. Security Act | | |
| | [ ] 371 Truth in Lending | | | |
| | [ ] 380 Other Personal Property Damage | | | |
| | [ ] 385 Property Damage Product Liability | | | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | | |
| [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus: | | |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

[x] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION    (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 USC 9601 et seq. (CERCLA)

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY    (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  9/29/06

SIGNATURE OF ATTORNEY OF RECORD
Douglas E. McCann

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

## United States District Court for the District of Delaware

Civil Action No. ___0 6 – 6 1 2___

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___2___ COPIES OF AO FORM 85.

___9/28/06___
(Date forms issued)

_____
(Signature of Party or their Representative)

___DOUGLAS P. McCANN___
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action