IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>and the STATE OF DELAWARE,<br><br>Trustees,<br><br>v.<br><br>E.I. Du Pont DE NEMOURS AND COMPANY<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIV. NO. 1:06-cv-000612-***<br>)<br>)<br>)<br>) |

**JOINT MOTION OF THE UNITED STATES AND THE STATE OF DELAWARE
FOR ENTRY OF CONSENT DECREE AND MEMORANDUM IN SUPPORT**

The United States of America (United States), on behalf of the Secretary of Commerce,

acting through the National Oceanic and Atmospheric Administration (NOAA), and the

Secretary of the Department of the Interior (DOI), acting through the U.S. Fish and Wildlife

Service (FWS), and the State of Delaware (or "State"), acting through the Delaware Department

of Natural Resources and Environmental Control (DNREC) (collectively, "the Trustees"); and

E.I. du Pont de Nemours and Company and Ciba Specialty Chemicals Corporation (collectively,

"DuPont"), hereby move this Court for approval and entry of the Consent Decree in United

States v. E.I. Du Pont de Nemours and Co. and Ciba Specialty Chems. Corp., Civil Action No.

06-612. The reasons for this motion are set forth below.

In their Complaint, filed simultaneously with the lodging of the Consent Decree on

September 29, 2006, the United States and the State of Delaware sought damages for injuries to

1

natural resources ('Natural Resource Damages"), pursuant to Sections 107(a)(4)(c) and (f) of the

Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42

U.S.C. §§ 9607 (a)(4)(c) and (f) ("CERCLA") and the Delaware Hazardous Substance Cleanup

Act, 7 Del. C. Chapter 91 ("HSCA") resulting from the releases of hazardous substances from

the DuPont-Newport Superfund Site in Newport, Delaware (the "Superfund Site" or "Site").

On October 12, 2006, and again on November 6, 2006, the United States published notice

of the proposed Consent Decree in the Federal Register and solicited public comment. See 71

Fed. Reg. 64984 (Nov. 6, 2006). The public comment period expired on November 22, 2006.

The United States received two comments but does not believe that either merit rejection of the

Consent Decree. Accordingly, the United States respectfully requests that the Court approve,

sign and enter the proposed Consent Decree.

## I.    BACKGROUND

The Superfund Site is located in New Castle Co., Delaware, within the Christina River

watershed. The approximately 120 acre Assessment Area is an area within the Superfund Site

and is the subject of this Consent Decree.  The Assessment Area consists of a pigment

manufacturing plant, a former chromium dioxide production facility (DuPont Holly Run Plant),

two inactive landfills separated by the Christina River, a small recreational area (Ballpark), and a

segment of the Christina River and associated wetlands.  Hazardous substances found at the

Assessment Area include arsenic, barium, cadmium, chromium, cobalt, copper, lead, manganese,

mercury, silver, and zinc, all of which are "hazardous substances" within the meaning of section

101(14) of CERCLA, 42 U.S.C. § 9601(14) and 7 Del. C. Section 9103(11).  The Assessment

Area is the subject of the Trustees' Damage Assessment and Restoration Plan (DARP)

2

incorporated in the Consent Decree as Attachment A, and is depicted on the map attached to the Consent Decree as Attachment B.

### A. History of the Site and Remedial Actions

E. I. Du Pont de Nemours purchased and operated an existing pigment manufacturing facility in 1929, and operated it until 1984 when it was acquired by Ciba Specialty Chemicals Corporation ("Ciba"). As part of the acquisition agreement, E. I. du Pont de Nemours agreed to indemnify Ciba for certain claims, including the claims in the Complaint. E. I. du Pont de Nemours continues to own the remainder of the Site, and manufactured chromium dioxide powder at the Site from 1978 until 1999.

In 1988, E. I. du Pont de Nemours entered into an Administrative Order on Consent (AOC) with the Environmental Protection Agency (EPA) to complete investigations for the Superfund Site. The Superfund Site was included on the National Priorities List in early 1990. A Remedial Investigation/Feasibility Study (RI/FS) for the Superfund Site was conducted in three phases between August 1988 and 1992. In August 1993, a Record of Decision (ROD) was issued that specified remedial actions for seven operable units within the Superfund Site. Those remedial actions have been completed.

### B. Natural Resource Damages

The United States and the State share trusteeship of the injured resources in the Assessment Area. The Trustees determined that releases of hazardous substances to the wetlands, surface water, groundwater, sediments, and terrestrial habitats within the Assessment Area have resulted in injury to these natural resources, and that some of these injuries have continued post-remediation. Consequently, the Complaint filed by the United States seeks

3

Natural Resource Damages (as defined in the Consent Decree) arising out the releases of hazardous substances at the manufacturing facilities and adjacent waste disposal areas at the Site.

Liability for damages to natural resources, pursuant to Sections 107(a)(4)(c) and (f) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(c) and (f), is to the United States and the State of Delaware for natural resources belonging to, managed by, controlled by, or appertaining to them. The State also brought similar claims under HSCA, 7 Del. C. Chapter 91. Under their respective statutory authorities, the United States and the State are authorized to assess injuries to federal and state natural resources caused by releases of hazardous substances and to recover damages to: (1) restore, rehabilitate, replace or acquire the equivalent of the injured natural resources and (2) reimburse the Trustees for the reasonable costs of the damage assessment and restoration planning.

Pursuant to the Consent Decree, DuPont will: (1) pay the costs for the Trustees to implement the projects in the Damage Assessment and Restoration Program (DARP) (Consent Decree Attachment A); (2) purchase an Environmental Covenant from the landowner of private property outside the Assessment Area on which the restoration projects set forth in the DARP will be implemented (hereinafter "Pike Property"); (3) pay Damage Assessment Costs incurred by the Trustees; and (4) pay a groundwater damage claim to the State, and receive a groundwater credit from the State for prior work performed to extend access to a public water supply, as compensation for any remaining injuries to groundwater in the Assessment Area. See Consent Decree ¶¶ 16-27. All Natural Resource Damage payments required under the Consent Decree are set forth in the "Summary of Costs" which is Attachment G to the Consent Decree. In addition, DuPont covenants not to sue and agrees not to assert any claims or causes of action against the

4

United States and the State for any claims arising from or relating to the Restoration Projects or Natural Resource Damages. See Consent Decree ¶ 37. (Defined term)

In return for the satisfactory performance of all of the obligations under the Consent Decree, and except as specifically provided in Section XII of the Consent Decree, the United States and the State of Delaware have covenanted not to sue or to take administrative action against DuPont for Natural Resource Damages at the Assessment Area. See Consent Decree ¶ ¶ 33-36.

The Parties agree that the DARP and this Consent Decree represent a cooperative and collaborative process. In addition, the Parties recognize that implementation of this Consent Decree will expedite the restoration of natural resources and avoid prolonged and complicated litigation among the Parties, by fully and finally resolving the Natural Resource Damage claims under CERCLA and HSCA, with respect to the Assessment Area.

## II.    ARGUMENT

### A. Standard of Review of a Consent Decree

Entry of a consent decree is "a judicial function and an exercise of the judicial power." Nat'l Wildlife Fed'n. v. Gorsuch, 744 F.2d 963, 968 (3d Cir. 1984) (citation omitted). In reviewing CERCLA settlements, "[a] court should approve a proposed consent decree if it is fair, reasonable, and consistent with CERCLA's goals." United States v. S.E. Pa. Transp. Auth., 235 F.3d 817, 823 (3d. Cir. 2000).

There is a "strong judicial policy in favor of parties voluntarily settling lawsuits." Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3d. Cir. 1982). Parties entering consent decrees avoid incurring further administrative costs associated with continued litigation, thus promoting

judicial efficiency. See id. This policy "has particular force where . . .a government actor

committed to the protection of the public interest has pulled the laboring oar in constructing the

proposed settlement." United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990);

accord United States v. Atlas Minerals & Chemicals, Inc., 851 F.Supp. 639, 648 (E.D. Pa. 1994).

As the First Circuit recently stated:

> Considerable deference is involved in the review of CERCLA
> consent decrees . . . . [T]here is deference to the administrative
> agency's construction of the settlement. That so many affected
> parties, themselves knowledgeable and represented by experienced
> lawyers, have hammered out an agreement at arm's length and
> advocate its embodiment in a judicial decree, itself deserves weight
> in the ensuing balance.

United States v. Davis, 261 F.3d 1, 21 (1st Cir. 2001) (citations and internal quotation marks

omitted). The Third Circuit has endorsed this deference to federal agency expertise in approval

of consent decrees. See, e.g., S.E. Pa. Transp. Auth., 235 F.3d at 822.

Furthermore, while the reviewing court may approve or reject the proposed consent

decree, it does not have the authority to modify the proposed decree. United States v. Cannons

Eng'g, 720 F. Supp. 1027, 1036 (D. Mass. 1989); See Officers for Justice v. Civil Serv.

Comm'n., 688 F.2d 615, 630 (9th Cir. 1982). As the First Circuit states, "[t]he relevant standard .

. . is not whether the settlement is one which the court itself might have fashioned, or considers

as ideal . . . ." Cannons Eng'g, 899 F.2d at 84. Accordingly, the Court's role in this process is

limited and the Court should not substitute its judgement for that of the parties. Because the

proposed settlement is fair, reasonable, and consistent with the goals of CERCLA (and HSCA),

this Court should enter the Consent Decree.

6

**B. The Consent Decree is Fair**

Fairness in the context of a CERCLA consent decree has both procedural and substantive components. Procedural fairness requires that the settlement negotiations "take place at arm's length. A court should look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." In re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 207 (3d. Cir. 2003) (citation and internal quotation marks omitted). Here, the Consent Decree is procedurally fair. The parties devoted considerable time to negotiating a fair and reasonable settlement. All parties were represented by experienced counsel and all negotiations were conducted at arms-length, voluntarily, and in good faith.

In addition, the Consent Decree is substantively fair. "Substantive fairness requires that the terms of the consent decree are based on comparative fault and apportion liability according to rational estimates of the harm each party has caused." Id. at 207 (citation and internal quotation marks omitted). Further, the measure of comparative fault on which the settlement terms are based must not be arbitrary, capricious, and devoid of rational basis. See S.E. Pa. Transp. Auth., 235 F.3d at 824. As owner and operator of the Site during the relevant time period, it is substantively fair that DuPont pay damages for injuries to natural resources that arose out of the release of hazardous substances at the Site. Furthermore, DuPont expressly agreed to indemnify Ciba, the current owner of the pigment manufacturing plant, for claims such as this one. Accordingly, the Consent Decree is also substantively fair.

7

**C. The Consent Decree is Reasonable.**

The proposed Consent Decree is reasonable because it is technically adequate, contains fair, negotiated terms, and adequately compensates the public. "In the usual environmental litigation, the evaluation of a consent decree's reasonableness will be a multifaceted exercise." Cannons Eng'g, 899 F.2d at 89. The three factors that Cannons Eng'g highlighted are present in this case: (1) the proposal is technically adequate to clean up the environment; (2) the terms negotiated in the settlement consider the "relative strength of the parties' litigating positions"; and (3) the settlement satisfactorily compensates the public for the cleanup costs. See id. at 89-90.

Here, the proposed Consent Decree, along with the restoration measures already performed by DuPont in the Assessment Area, are technically adequate to clean up the environment and compensate the public for the injuries to natural resources. The basis for the Trustees' determination of the adequacy of the restoration measures required by this Consent Decree are set forth in the DARP. More specifically, DuPont has agreed to purchase an Environmental Covenant on the Pike Property, to protect it in perpetuity, and fund certain restoration measures on the Pike Property, including costs to implement the DARP, and costs of Trustee oversight and monitoring of the DARP. See Consent Decree ¶ 23.

Further, the Consent Decree reflects the relative strengths of each party's negotiation positions, as well as the potential time and expense of litigation. See Cannons Eng'g, 899 F.2d at 90 ("[R]easonableness of a proposed settlement must take into account foreseeable risks of loss"); In re Acushnet River & New Bedford Harbor, 712 F.Supp. 1019, 1036 (D. Mass. 1989)

8

("An interpretation of [CERCLA] more in keeping with the intent of, as well as the language employed by, Congress is one that requires the United States to assess the strengths and weaknesses of its case and drive the hardest bargain it can.") Settlement of this matter without litigation conserves the parties' and Court's resources.

DuPont's obligations under the Consent Decree, in conjunction with previous remedial measures performed by DuPont, will adequately compensate the public for the injuries to federal and state natural resources within the Assessment Area. Under the Consent Decree, DuPont will pay $1,047,205.51 in Damage Assessment and Restoration Costs (including maintenance and monitoring) and purchase the Environmental Covenant on the Pike Property. DuPont also voluntarily improved access to a public water supply, at an additional cost of $566,000.00 (for which it received a Natural Resource Damage credit from the State of Delaware). Additionally, DuPont, in consultation with EPA, DNREC, NOAA, and USFWS, performed remediation measures to restore injured natural resources associated with the Assessment Area (for which the Trustees have credited DuPont accordingly in the DARP).

### D. The Consent Decree is Consistent with CERCLA's goals.[1]

The Consent Decree is consistent with CERCLA's goals. It requires DuPont to compensate the public for the injuries to natural resources within the Assessment Area caused by the releases of hazardous substances at the Site. The United States and the State of

---

[1] This motion focused on standards for entry of CERCLA settlements. The same standards may be used to assess this settlement under the HSCA statute, as it promotes substantially similar goals.

9

Delaware have served the public's interests by entering this Consent Decree with DuPont,

thereby avoiding costs of litigation while decreasing the burden on the federal court system.

### E. The Public Comments Provide No Basis to Deny Entry of the Consent Decrees.

The United States received only two comments to the proposed Consent Decree. The

first comment was from B. Sachau in Florham Park, NJ. It states:

> this kind of paltry settlement for pollution is simply corrupt and should not be
> accepted. the people of this country are beset by polluters who pollute and
> pollute and have no compassion to stop them from killing and poisoning people.
> I do not think this sum is adequate. I think the settlement should be a minimum
> of twenty five million dollars. (Capitalization errors in original.)

See Attachment 1. However, the facts and the governing law do not support the imposition of a

$25,000,000 penalty. The United States and the State of Delaware have determined that the

comment does not disclose facts or considerations that render the Consent Decree unfair,

unreasonable, or inconsistent with CERCLA's objectives.

In the second comment, Beazer East, Inc. ("Beazer") indicated that it owns property,

including the Koppers Co. Superfund Site ("Koppers Site"), in the vicinity of the DuPont Site.

See Attachment 2. Beazer further indicates that it contributed to the costs of extending access to

a public water supply, the project for which DuPont received a credit from the State of Delaware

for its share. Beazer also stated that its sole objective in providing the comment is to preserve

for the record its hopes of receiving a similar credit from the State in the amount of its share in

the event of a future claim. The State's decision to give DuPont a credit towards Natural

Resource Damages in the Consent Decree was based on the facts and circumstances presented

here. Any decision by the State to award a credit to Beazer for money previously spent or work previously performed at the Koppers Site, or any other site, will be determined based on the relevant facts and applicable law. See letter from Jane Biggs Sanger to Jane Patarcity, Attachment 3.

## III.    CONCLUSION

The United States, the State of Delaware, and DuPont have entered into an arm's length negotiation that resulted in the Consent Decree before the Court. The public's interest is served by this fair, reasonable, and statutorily-faithful Consent Decree. For the foregoing reasons, the United States and the State of Delaware move for entry of the Consent Decree, and accordingly request that the Court approve, sign, and enter as an order of the Court the proposed Consent Decree.

Respectfully submitted,

for SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

11

_for_ RACHEL JACOBSON
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 305-0494 (PHONE)
(202) 514-0097 (FAX)


COLM F. CONNOLLY
United States Attorney
District of Delaware


DOUGLAS E. McCANN
Assistant United States Attorney
Delaware Bar ID No. 3852
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware  19899-2046


*Attorneys for the United States*


OF COUNSEL:
Brandon Blum, NOAA
Mark Barash, DOI

12

FOR PLAINTIFF STATE OF DELAWARE:

DATE: _1/5/07_

ROBERT S. KUEHL
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, Delaware 19801

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2007, the Joint Motion of the United States and the

State of Delaware for Entry of Consent Decree and Memorandum in Support was served

electronically and by first class mail to the following:

E.I. DU PONT de NEMOURS and COMPANY

PAMELA MEITNER, Corporate Counsel
Delaware State Bar ID #559
E.I. du Pont de Nemours and Company
1007 Market Street - D7099
Wilmington, DE 19899

CIBA SPECIALTY CHEMICALS CORPORATION

F. MICHAEL PARKOWSKI
Parkowski, Guerke & Swayze, P.A.
116 W. Water Street
P.O. Box 598
Dover, DE  19903-0598

Douglas E. McCann

14

1

public comment on federal register of 11606 pg 64984.txt
From: jeanpublic@yahoo.com
Sent: Monday, November 06, 2006 11:03 AM
To: Fleetwood, Tonia (ENRD); comments@whitehouse.gov;
vicepresident@whitehouse.gov
Subject: public comment on federal register of 11/6/06 pg 64984

fed reg doc 06 9104 - cercla settlement ca 06 612
dupont with state of delaware for 1.6 million

this kind of paltry settlement for pollution is simply
corrupt and should not be accepted. the people of this
country are beset by polluters who pollute and pollute
and have no compassion to stop them from killing and
poisoning people.

i do not think this sum is adequate.

i think the settlement should be a minimum of twenty
five million dollars.
b. sachau
15 elm st
florham park nj07932

---

Do you Yahoo!?
Everyone is raving about the all-new Yahoo! Mail.
http://new.mail.yahoo.com

2

Jacobson, Rachel

# Beazer

BEAZER EAST, INC., ONE OXFORD CENTRE, SUITE 3000, PITTSBURGH, PA 15219-6401

November 10, 2006

Assistant Attorney General
Environment and Natural Resources Division
P.O. Box 7611, Ben Franklin Station
U.S. Department of Justice
Washington, D.C. 20044-7611

RE:    **Beazer East, Inc. Comments**
       **United States and the State of Delaware v. E.I. Du Pont De Nemours & Company,**
       **Inc. and CIBA Specialty Chemicals Corporation, D.J. Ref. 90-11-2-883/2**

Dear Sir/Madam:

By way of this correspondence, Beazer East, Inc. ("Beazer") submits the following comment to the proposed Consent Decree ("Consent Decree"), which was lodged in the above-referenced matter in the United States District Court of Delaware on September 29, 2006 (Civil Action No. 06-312). The Consent Decree pertains to the settlement of alleged natural resource damages from manufacturing facilities that are, or were, owned by E.I. Du Pont De Nemours & Company, Inc. ("Du Pont") and/or CIBA Specialty Chemicals Corporation ("CIBA") in New Castle County, Delaware ("Site"). The Site is located in the vicinity of property owned by Beazer, including the Koppers Co., Inc. (Newport Plant) Superfund Site ("Koppers Site").

In the Consent Decree, Du Pont is granted a $566,000 Natural Resource Damage credit by the State of Delaware with respect to on-site groundwater for work performed to extend access to a public water supply along Old Airport Road and provide water hook-ups to surrounding businesses and residences. *See* Paragraphs 19 and 21 of the Consent Decree. Beazer notes that Beazer and Du Pont entered into an agreement by which they agreed to share the costs of extending the subject public water supply ("Agreement"). In fulfillment of that Agreement, Beazer contributed approximately $246,000 to the installation of the water supply line. Beazer provides this comment solely to preserve for the record that similar credit for natural resource damages regarding Beazer's activities at the Koppers Site should be available in the event of any future claim.

Beazer appreciates the opportunity to comment on the Consent Decree.

Sincerely,

*Jane Patarcity* /cmB

Jane Patarcity

Corr.
90-11-2-883/2



**Beazer**

BEAZER EAST, INC.
One Oxford Centre
Suite 3000
Pittsburgh, PA 15219-6401

Assistant Attorney General
Environment and Natural Resources Division
P.O. Box 7611, Ben Franklin Station
U.S. Department of Justice
Washington, D.C. 20044-7611

3



**STATE OF DELAWARE**
**DEPARTMENT OF NATURAL RESOURCES**
**AND ENVIRONMENTAL CONTROL**
**DIVISION OF AIR AND WASTE MANAGEMENT**
391 LUKENS DRIVE
NEW CASTLE, DELAWARE 19720-2774

WASTE MANAGEMENT SECTION
SITE INVESTIGATION &
RESTORATION BRANCH

TELEPHONE: (302) 395-2600
FAX:            (302) 395-2601

December 7, 2006

Mrs. Jane Patarcity
Manager Environmental & Technical Services
Beazer East, Inc.
One Oxford Center, Suite 3000
Pittsburgh, PA 15219-6401

RE:    **Beazer East, Inc. Comments, United States and the State of Delaware v. E. I.**
       **DuPont de Nemours & Company, Inc. and CIBA Specialty Chemical**
       **Corporation, D.J. Ref. 90-11-2-883/2**

Dear Ms. Patarcity:

In response to your letter dated November 10, 2006 (attached) the State of Delaware
acknowledges that the Consent Decree between the State of Delaware and E. I. DuPont
de Nemours & Company, Inc. (DuPont) and CIBA Specialty Chemical Corporation,
(CIBA) gave a credit towards natural resource damages for groundwater resources of the
State of Delaware to DuPont and CIBA, jointly. This decision was based on the facts and
the circumstances of that case. Any decision by the State of Delaware to award a credit,
for money previously spent or work previously performed, to Beazer East, Inc., or to any
other party, for natural resource damages at the Koppers Site, or at any other site, will be
made on a case-by-case basis, and will be determined based on all relevant facts and
circumstances of the particular case, and on all applicable laws.

Thank you for your comment to the Consent Decree.

Respectfully yours,

Jane Biggs Sanger
State of Delaware Natural Resource Trustee for Administration

*Delaware's good nature depends on you!*

Ms. Patarcity
December 7, 2006
Page 2 of 2

JFBS/vdc
JFB06124.doc
DE 2148-X009 II I01

Attachments:   Express Mail, United States Postal Service, Tracking Certificate dated
                         November 10, 2006
               Beazer East, Inc. Envelope addressed to the Assistant Attorney General,
                         Environmental and Natural Resource Division,  United States
                         Department of Justice
               Beazer East, Inc., Letter dated November 10, 2006, Comments, United
                         States and the State of Delaware v. E. I. DuPont de Nemours &
                         Company, Inc. and CIBA Specialty Chemical Corporation, D.J.
                         Ref. 90-11-2-883/2

pc:      Robert S. Kuehl, Esquire, Deputy Attorney General, State of Delaware
                   Department of Justice, with Attachment
         Rachel Jacobson, Counsel for the United  States Department of Justice
         Bennett N. Anderson, State of Delaware Natural Resource Trustee for Initial
                   Incident Response, with Attachment
         Robert Hossler, State of Delaware Natural Resource Trustee for Resources, with
                   Attachment
         Kathleen Stiller Banning, Division of Air & Waste Management, with
                   Attachment
         Qazi Salahuddin, Division of Air and Waste Management, with Attachment